Moore v. White 23-6133. Counsel, will you make your appearance and proceed? Please the court. Good morning. I'm Tessa Henry from the Oklahoma Attorney General's Office on behalf of the appellant respondent, Tamika White. In this case, Moore has never carried her burden to show that it is more likely than not that no reasonable and properly instructed juror would have convicted her in light of her new evidence. As such, by finding that Moore passed through the Shloop Actual Innocence Gateway, the district court erred. And also, by later finding Strickland prejudice based upon the same evidence, the district court erred. Counsel, can we talk about the firm waiver problem that appears in this case? Yes. I'm having trouble understanding how the state hasn't waived the challenge to the district court's actual innocence determination under our firm waiver rule jurisprudence when you affirmatively elected not to object to the 2019 report and recommendation. So we did in 2011, following that initial timeliness, actual innocence finding, did strenuously object and timely object. In 2019, we had made some fairly novel arguments with respect to actual innocence and procedural bar. And the magistrate judge in that 2019 report and recommendation rejected those arguments and recommended that we respond on the merits. At that point, we elected to not proceed with their procedural bar arguments as to actual innocence and felt that our challenge to the timeliness, actual innocence finding was preserved. The 2011 challenge? Yes. But didn't you re-argue it in 2019? Briefly, but... What does briefly mean? I understand what you're, you changed sort of course, you had a procedural point and then you, you know, but, but you did argue, you made arguments to the, to challenge timeliness. I felt pretty robustly. Yes. There was no really new evidence. It was based upon the same evidence as the previous actual innocence findings. So there was, it was simply just kind of re-urging it. But in my opinion, us not objecting to that second report and recommendation didn't somehow undo our objection to the original report and recommendation. And is that based on Greer? Yes. Is that based on your reading of Greer? Yes. Can you speak to that a little bit? Yes. So in Greer, it dealt with two report and recommendations with respect to the summary report and recommendation, but not the second one. And this court found that the objections as to the first report and recommendation were preserved. But anything to do with the second report and recommendation was not. But there was only one complaint in that case. And here we have a different operative pleading, right? Does that make a difference? Not in my opinion, Your Honor. Really, it boils down to no matter what petition we're dealing with, it was untimely. Moore was untimely in her claims by about 358 days in this case. Does it matter that you preserve, well, that you objected to the 2011 findings on actual innocence? Yes. Okay. In the context of the 2019 determination, that those findings of 2011 were being used to essentially establish definitively the actual innocence determination after her trip to the state court, right? Yes. Okay. Does it matter that those 2011 findings were being used in a different context in 2021 as it relates to a ultimate determination of prejudice for the ineffective assistance of counsel claim? In other words, tracing this out, you object in 2011 to this stuff, this substance of findings as it relates to innocence. Correct. And fast forward to 2021 and that stuff has been repurposed for a different purpose of showing that there was prejudice under Strickland ineffective assistance. Does that matter for purposes of determining whether the objection that you made in 2011 can carry forward and preserve in 2021? Okay. As to prejudice, I would say the moment at which we preserved the challenge to prejudice would be in the 2019-21 era. I get that, but it's at least my understanding that what is being the contention of waiver here is that because you did not object in 2019 to this, to the actual innocence determination, that in 2021 you have already not preserved this portion that is now being used as the basis for Strickland prejudice. And so what I'm asking you is if you have an objection in 2011, and we're just talking about underlying findings now. We're not talking about the legal glaze that goes over that. The underlying findings upon which Judge Bachrach determined actual innocence, they're now taken and in 2021 we say based upon these same findings, we determine there is Strickland prejudice. As long as you objected in 2011, what I'm trying to understand is does the repurposing effect matter? Potentially. Well, I think it better for you. Yes. And I'm not sure if this will 100% answer your question, but we strenuously objected in 2011, as you noted, and I think for purposes of judicial economy, to have us have to object every time that we revisit those same findings, nothing about those findings changed. It would be a waste of judicial economy, essentially asking the district court over and over again. But didn't you ask the court to revisit the findings? Mainly as to procedural bar, yes. As to procedural bar, which is the legal, again, that is the legal construct in which findings are reviewed. I guess what I'm trying to tease out is this. Does it not matter whether what we're talking about is the underlying findings upon which a legal determination is made? 2011, I object to the legal determination and I object to the findings the court made in making that determination. Okay. 2021, we're talking about a different legal determination. We're not talking now, I mean, I'm sure you'll fight to the dying day on the notion of whether actual innocence was shown and whether this is timely. But in 2021, what was at play was not that. That had happened in 2019. What was at play in 2021 was taking those findings from 2011 and saying they show Strickland prejudice. Yes. Right? Yes. Okay. And I would say that even if this court does find that we waived the actual innocence challenge, we certainly did preserve Strickland prejudice again by objecting to those factual findings in 2011. And then again, challenging Moore's arguments with respect to prejudice in responding on the merits to the second amendment petition, and then objecting to the report and recommendation on the basis of prejudice. I think you have a much better case for your preservation case on prejudice. Absolutely. But my question is, isn't the analysis coextensive? In other words, I'm trying to understand why you don't develop a prejudice argument on appeal. You preserved it, I think. But I don't think you've developed it on appeal. So how have you not waived your prejudice argument on appeal? It seems that the way I'm trying to answer my own question is, well, you must think that actual innocence and prejudice in this case are coextensive analytically, but they're not. They're subject to different legal standards. And I just don't see an argument developed in the briefing on prejudice that is separate from your objections and argument on innocence. Why isn't that a problem for you? Well, I respectfully disagree, Your Honor. I do think that we did flesh out the prejudice. Again, in this case, as you said, they're very coextensive. I do realize the prejudice standard is a lower standard than actual innocence. But we believe that prejudice hasn't even been met here. And we repeatedly reference Strickland in our opening brief and point this court to the Strickland standard. But you don't grapple with the district court's determination on prejudice. Well, the district court's determination on prejudice was essentially actual innocence has already been found. In my opinion, that was the district court's prejudice finding. And wasn't it your burden to explain why that's wrong, that reasoning that informed that conclusion is wrong? Yes. And you've done that here, you think? Yes. And I quickly just with respect to prejudice and the actual innocence question, I do want to note that this case essentially boils down to a battle of the experts. So which expert do we want to And in this case, the district court really substituted its judgment for that of a reasonable and properly instructed jury. And I will point this court to Parnell v. White, which is actually a COA that was denied last week. And that case involved very similar facts. It's case number 23-5103. You said it was last week. Yes. Have you submitted a supplemental authority letter on that? Not yet. If you'll do that after this. Absolutely. Go ahead. In that case, this court noted that conflicting evidence, even conflicts between experts, is for a jury to resolve. And we cannot say that a reasonable jury would credit only one of the witnesses. And this actually dealt with the shaken baby syndrome and abusive head trauma issue, where you had a expert come forward in habeas that said, well, this injury was likely accidental and would have taken days to develop. Whereas the state's experts opined that this injury was acute. So it's very similar to this case. But this is not just a battle of experts, is it? Because, I mean, you have the people who talk about who provided daycare services for the child, who talked about the child being lethargic and all of the stories regarding the child hitting its head on the bathtub and the pattern of flipping backward and hitting its head. So it's not just a question of people coming and looking at cold records and talking about what they think, is it? I mean, there's more here than that. There is more here than just simply a battle of the experts. I will note that a lot of that evidence does come from interested witnesses who are family and friends of Moore. I will also note that the trial evidence showed that on the day that Avery collapsed, he was acting normally. And Moore herself even testified at trial that he was acting normally. He got up and he ate breakfast, he played Hot Wheels with his father, he watched a movie, he ate a big lunch of spaghetti. So if he was truly dying of some latent head injury or some existing disease, he would not have been able to do all of that. Where is there evidence for that? I mean, that sounds like we're talking about what commonsensically would be the case. I mean, who said that? Dr. Griggs did testify at trial that Avery would have shown some symptoms. So a reduced level of consciousness, inability to walk properly, confusion, vomiting, things of that nature. He really would be doing that all the time because there was a pattern of not acting a matter that was normal, in air quotes. I mean, so I mean, so I mean, is Dr. Griggs saying he would have to be doing that all the time? Not necessarily, but Dr. Griggs did explain that he was asking Moore and Mr. Snyder specifically about kind of the past 24 hours because he was looking for those symptoms and kind of how Avery was acting to explain the sudden collapse. And so it would have been in the more recent past, so about the past, the previous 24 hours before his collapse. Before you sit down, let me ask you a question about the substantial contributing factor alternative theory. Is the only argument, well, are the only citations upon which you rest a claim of preservation in the district court the ones that you offered in your reply brief? I mean, is there anything beyond that? I mean, I noted in your reply brief, I think page 7, note 3, you offered some citations as to where you preserve that in the district court. Is that it? For the appendix, I have pages 2392, 2400 through 01 and 2407. And I will note, if I have this court's permission to continue my answer. You can, but is that what was in the reply brief is what I'm getting? Yes, your honor. And I will note quickly that it was kind of unforeseeable, that argument, because the findings... Unforeseeable? The findings of fact and conclusions of law essentially embraced an entirely new theory of the case, that it still could have been child abuse, but it wasn't Moore's child abuse that killed Avery. So at that point, that argument was right. The findings of fact in the district court's 2021 decision, are you saying? No, in the 2011. All right. But we're talking about then the proceedings as they played out in 2021 and whether you theory of substantial contributing factor, right? That's what's at issue here. And how does that relate to what went on in 2011? That was when we first preserved the argument. I'm sorry, I misunderstood your honor's question. We did raise it in the, I believe the request to stay in the district court. Well, I mean, that theory works to, if it works at all, it works to your benefit. So on a matter of preservation, you wouldn't, you shouldn't have had to have been surprised, would you? I mean, that would have been something that you should have argued. Surprised as to the 2011 findings. Well, I mean, the 2011 findings, when it gets you, but I mean, that, I mean, once you contemplate that and making your affirmative case, right? Yes. Okay. And if necessary, we can give you a little rebuttal. I mean, so please just sit down. Thank you. Appreciate it. Good morning. May it please the court. I am Andrea DeGilio Miller and along with my co-counsel, Christine Kaye, we represent Ms. Beverly Moore, who is also in attendance in court today. In the 13 minutes that Ms. Moore was alone with AS on January 13, 2004, the state of Oklahoma continues to maintain that Ms. Moore shook AS so violently and hit his head against a carpeted floor that it caused his death. Medical science does not generally support that theory. And the, and when I talk about that theory, I am specifically talking about the theory on timeliness, because that is all that is before the court at this stage of the proceedings, whether or not he would have presented to the hospital after those 13 minutes with the kind of symptoms that he had. And would he have presented with those symptoms if he had been previously assaulted on the head? He's had traumas on the head, but not, it hadn't yet come to the point of death. And then this was kind of the, you know, the final straw. Yes, Your Honor. Although it's possible that they weren't injuries in terms of inflicted injury, rather accidental injuries. So I want to be clear about the use of the word injury. But yes, Your Honor. And that is really the case of innocence that has been presented to the courts since 2010, if you will. And that, that the, some, most of the injuries, everybody agrees across the board. The state's witnesses at trial, the new witnesses, all agree that the mechanism of death was significant brain swelling. That brain swelling could not have occurred in the time period that they say they can pinpoint his injuries were inflicted. Because that's really their, what her conviction is based on. That in that 13 minutes they can say that. If there had been prior trauma that has caused the brain swelling, it's like in a football concussion. They have to stay out for a while until that concussion recedes. If that waiting period had not yet occurred here, at least in football, you stay out. I assume that you're more vulnerable at that point. Yes, Your Honor. And that is what is typically referred to as a 2005 many witnesses testifying on behalf of the state denied existed. But that's exactly right. That, and he had a, and he, contrary to what the state maintains, he actually had a series of head injuries. There wasn't just one. There was a head injury in November. The briefs make that clear. Yes. Well, let me be clear. When you're talking about timing and specifically, at least as I understand it, it's the state's theory. And that's what we're grappling with. It's a state's theory that whatever Ms. Moore did on, I think January 13th, killed the child. In other words, those are the injuries that killed the child. Irrespective of whether she shook the child or not, irrespective of whatever she did to the child, the question is really whether what she did on that day had caused the death, right? Your Honor, it's a little bit more refined than that. Okay. The state's theory is that she was the only one who had done anything to have caused A.S. to present to the hospital with the symptoms he had that day. They were very clear. They were very clear at trial. They were very clear during the course of our five years or six years back in state court at their request during the evidentiary hearing that their theory was she was the only one who had done anything abusive and the only one who was responsible for these injuries. In the charging documents, does it say that? In the charging documents, does it say the only event that caused this death was such and such? She is charged solely, so she was not charged. I know, but there's a charging document. I mean, the charging document might say, might imply that there was leading up injuries and this was the event. What does the charging document say about whether there was any contribution or whether this was out of the blue? The charging document specifically says on or about January 13, 2004, Beverly Moore used unreasonable force against A.S. resulting in his death. But that's that's ambiguous. That doesn't address whether there was whether the child was vulnerable or not. Go ahead with your other argument. Well, well, I need to be clear here because the question of whether anyone else hurt the child, as I understood it, as I understand it, is really not what we're what the fight is about. The fight is about whether the injuries took place on January 13th or whether they or whether the death of the child as a result of this trauma could have resulted from things that occurred earlier. Isn't that what we're talking about? Yes, your honor. Before this court is solely the issue of the timing of the injuries that resulted in his death. Okay. Well, then whatever went on before January 13th, I don't really care whether it was Miss Moore or somebody else. Is there any reason I should care about that? Well, the state doesn't care about that either. So you are consistent with what their theory has always been as to conviction. That's what we're here about. But yes, your honor, you should tell me why I don't care. Why should I care about that? What I should care about is what she did on January 13th, right? Your honor, strictly speaking, that is what she is charged with. So yes, you should care about that. But taking a look at not only where the theory of abusive head trauma sits today, but the newly discovered evidence that's been presented, it matters what happened before January 13th. And it matters significantly because we know now, and they knew at the time of trial, that the injuries that were observed at autopsy and then later on the new experts who actually did objective testing on microscopic tissue slides, that reflected objectively that there are signs that these injuries were older. And so the fact that it's older is significant. All those new pieces of evidence showed were that that child had had serious trauma to the head before. But not that those traumas were inevitably leading to death or leading to death on that day. Isn't that correct? I mean, it shows there's been significant trauma to the head. And so then we have, you know, we have the potential of a, you know, the testimony may be that what tipped it from a potential death to actual death was that day. Your Honor, yes. But that, what Your Honor has just summarized, essentially, is the second impact theory that up until recently, the state of Oklahoma has rejected soundly. That is not what Ms. Moore is convicted on. That wasn't the state's theory until we got to this court. Did the state negate it? I thought the state was ambiguous about that. The state just said what she did on that day resulted in the death to A.S. That is their theory. So that's a broad charging theory. The charging period is simply January 13th. Their allegations have always been, and what her jury convicted her of, was that what she did on January 13th accounted for everything that that all the medical experts have seen. The brain swelling. Was there anything in the indictment that said this child presented on January 13th with no prior injuries and she administered all the injuries that they killed the child? I thought that the charging document was simply ambiguous on that. It didn't address that issue. The charging document solely charges her. And it says that what she did that day resulted in the death. And that could pick up a tipping point event or it could tip could be alleging an event that starts with a clean slate. It could, your honor, potentially. That is not what happened in this case, however, because the state has firmly maintained for all of these years that it was solely Ms. Moore who was responsible for his death, not based on a second impact theory. The state specifically disclaimed second impact until this case. I'm surprised to hear your argument today focusing not on waiver. Not on what, I'm sorry? On waiver. On the state's waiver. Because certainly it suggests to me from what you're arguing that you don't think the state has a waiver problem. Your honor, I do. I was simply trying to get into the factual basis of the case before addressing waiver, but I'd be happy to address waiver now because it first and foremost is the argument we first present in our briefing. I think it's clear that in this case the state, the appellant has waived the argument on the Schlup finding. They did so and in the reply brief they specifically say it was a strategic choice because they saw the writing was on the wall. How do you respond to the state's contention that they did preserve because they disaggregated their argument into a challenge to the procedural bar and a challenge to the EDPA timeliness? Do you think there's any traction there? No, your honor, I don't. And I think that that even contradicts the approach they've taken in this appeal because the only issue they have raised on appeal was challenging the district court's finding of factual innocence for the purpose of overcoming the ADPA time bar. There's a reason why they're doing that because if they do that, they win out. So they have not actually, and as your honor pointed out during the appellant's argument, they don't even really flesh out an argument about prejudice on appeal. They mention it, but they certainly don't lucidate any argument about what's wrong with the district court's prejudice finding other than they disagree with it because they felt like it disregarded their arguments, which we disagree that it disregarded their arguments. You're telling me that they're not making a Strickland argument on appeal and saying that the district court was wrong in 2021 in saying that there was prejudice for Strickland purposes and therefore a grant of habeas relief was appropriate? That was my understanding of what we're talking about here. Your honor, there is one ground of relief alleged in their appellate brief, and that ground of relief is the district court erred in finding the Schlupe gateway in our favor. And there are sub-propositions to that, but the sub-propositions relate to Schlupe. They mentioned prejudice and they mentioned that they believe they have preserved prejudice, but the approach that your honor asked them about during their argument isn't borne out by the pleadings. They say they purposely didn't file an objection the one time they are required to file an objection, which was to the 2019 report and recommendation finding Schlupe. They try to save it in the objection to the supplemental report and recommendation on Strickland, and then they take exception to the district court's finding of prejudice. But again, they don't go into depth about actually challenging the prejudice finding. They just maintain that the district court's finding was wrong. If you agree, or do you agree that there is some co-extension here with the actual innocence that the analysis that goes into deciding whether the Schlupe gateway is satisfied and the prejudice determination. This is just one of those cases where the evidence is the same, right? Strictly speaking, yes. The two inquiries are the same, although it's clear from House v. Bell that the finding of prejudice is actually a lower bar than the Schlupe gateway findings. So while technically they might be correct that they're separate and distinct, really once the Schlupe finding has been found, prejudice is established because it is a lower bar. So if we were to conclude that there is waiver on the actual innocence component of the state's argument, what is left to their appeal in your view? Nothing, Your Honor, because again, a simple review of their brief-in-chief makes it clear they have only challenged the Schlupe finding as it relates to the factual innocence claim used to overcome the procedural bar. And I'm about to run out of time. I would like to actually get into the the substance of the issue of waiver because they don't mention and they don't address the fact that after state court, and again we were in state court for six years on their request to exhaust these claims, it goes back into federal court. A second amended habeas petition was filed. They argued in response to the second amended habeas petition that we were now presenting new facts and new arguments that were unexhausted. So it's unclear how, if that was their argument in response to the second amended habeas petition, how any objection to the 2011 report and recommendation of the magistrate finding the Schlupe standard could preserve anything for this court's review on appeal. In 2021, and later the decision that is ultimately before us now, was the court ruling on actual innocence or whether at that point was the theory whittled down to the point where all that was at issue with Strickland? In other words, the order that forms the predicate for this appeal was a question of whether you prevail in Strickland or not, right? Yes, Your Honor, but that's because following the filing of the second amended habeas petition, they asked the magistrate judge to revisit the innocence finding and made arguments that the innocence findings, based on the new state court record that was developed, was either unexhausted or hadn't been proven. That is where they failed to file an objection. Okay, I'm sorry to interrupt, but that gets us to 2019. Yes. And then after 2019, when the order, the specific order that is before us now, at least in theory, what we're called upon to rule on is whether the district court erred in finding ineffective assistance of counsel and specifically prejudice, right? Yes, Your Honor, but that is not at issue in this appeal. What is at issue in this appeal is the district court's determination on the Shloop Gateway claim. And it's not at issue because of their briefing? Is that what you're saying? Yes, it's in their proposition heading. It is the only proposition that is contained in that brief. And I would also like to address Greer briefly, if the court will give me... You've got a minute. Go ahead. The Greer case only requires a straightforward application to establish that the Shloop Their reading of Greer would be an unprecedented application of not only Greer, but the firm waiver rule this court established and recognized. And it is so firmly established, it applies even to pro se litigants. And they have made no... They've given this court no grounds to excuse their waiver, only that they made the strategic choice and that should be okay because of judicial economy. So for the reasons articulated in our answer brief to the court, we ask that the court affirm the district court's order finding Shloop Innocence Gateway has been met and that Ms. Moore received gross ineffective assistance of counsel in this case, both because counsel was deficient and because the deficiency prejudiced our client. Thank you. Thank you, counsel. You have a minute. Thank you, Your Honor. I just want to point out that we have briefed Strickland in our opening brief. We extensively cited Strickland. Just because we didn't put it in our proposition heading shouldn't mean that it is waived. We extensively discussed it. And again, the Strickland... Where in your opening brief do you challenge the district court's finding on Strickland prejudice? Do you want page numbers? I just didn't see it. I saw lots of references to Strickland and assertions about prejudice. Our standards require the appellant to develop an argument, and I didn't see that argument developed, but I could have missed it. That would be, again, when we were referencing Strickland. And again, I would just note that the actual innocence finding and Strickland are wrapped up in each other. And so by discussing one, you're discussing the other. Irrespective of the different standards that apply? The Strickland standard is lower. Yes, I do indicate that in the brief and here. But again, it is our opinion here that Moore has not even met Strickland's prejudice prong. And so we would respectfully request reversal. Thank you. Thank you, counsel. The case is submitted. Thank you for the fine arguments, counsel.